UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DOREEN SUTTLES,

                         Plaintiff,

                                                          8:17-CV-0476
v.                                                        (GTS)

NANCY BERRYHILL
*Acting Commissioner of Social Security*,

                         Defendant.
_____

APPEARANCES:                                   OF COUNSEL:

SCHNEIDER & PALCSIK                             MARK A. SCHNEIDER, ESQ.
  Counsel for Plaintiff
57 Court Street
Plattsburgh, New York 12901

SOCIAL SECURITY ADMINISTRATION                 PETER W. JEWETT, ESQ.
OFFICE OF GENERAL COUNSEL–REGION II            Special Assistant U.S. Attorney
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, New York 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this action filed by Doreen Suttles ("Plaintiff") against the

Commissioner of Social Security ("Defendant") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3),

are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the

pleadings. (Dkt. Nos. 12, 14.) For the reasons set forth below, Plaintiff's motion for judgment

on the pleadings is denied, and Defendant's motion for judgment on the pleadings is granted.

The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's

Complaint is dismissed.

## I.     RELEVANT BACKGROUND

### A.     Factual Background

Plaintiff was born in 1970, making her 44 years old at the application filing date and 46 years old at the date of the ALJ's decision.  Plaintiff reported having a tenth grade education with a history of special education.  The vocational expert found that Plaintiff had past work as a fast food cashier, certified nurse's aide, motel housekeeper, factory laborer, and laundry worker. In her application, Plaintiff alleged disability due to Raynaud's syndrome, depression, chronic obstructive pulmonary disease ("COPD"), gastroesophageal reflux disorder ("GERD"), and fatigue.

### B.     Procedural History

Regarding the current application, Plaintiff applied for Supplemental Security Income on May 19, 2014, alleging disability beginning May 12, 2014.  Plaintiff's application was initially denied on July 21, 2014, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at a video hearing before ALJ Dale Black-Pennington on December 15, 2015.  On March 3, 2016, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 24-33.)[1]  On April 28, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-3.)

---

[1]     The Administrative Transcript is found at Dkt. No. 9.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

###### C.    The ALJ's Decision

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law.  (T. 24-33.)  First, the ALJ found Plaintiff has not engaged in substantial gainful activity since her application filing date.  (T. 24.)  Second, the ALJ found that Plaintiff's asthma, carpal tunnel syndrome, COPD, GERD, obesity, neuropathy, and Raynaud's syndrome are severe impairments; however, the ALJ found that her mental impairment is not severe.  (T. 24-20.)  Third, the ALJ found that Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings").  (T. 27-28.)  Specifically, the ALJ considered Listings 3.02 (chronic pulmonary insufficiency) and 3.03 (asthma).  (*Id.*)  Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> light work as defined in 20 C.F.R. 416.967(a) except: claimant can lift and carry ten pounds occasionally and less than ten pounds frequently; claimant can stand and walk for six hours in an eight-hour workday with normal breaks; claimant can walk short distances over ten to fifteen minutes at a time several times a day; claimant can sit for six hours in an eight-hour workday with normal breaks; claimant can occasionally climb or descend stair[s] or ramps; claimant must avoid operating foot controls; claimant can frequently, but not continuously finger and handle; claimant can push or pull; and claimant must avoid concentrated exposure to temperature extremes, smoke, including second-hand smoke, fumes, perfumes, chemicals, and other know[n] respiratory irritants

(T. 28.)  Fifth, the ALJ found that Plaintiff is unable to perform her past work.  (T. 31.)  Sixth, and finally, the ALJ found that Plaintiff remains able to perform a significant number of other jobs in the national economy including as a silver wrapper, house sitter, document preparer, ticket checker, addresser, and surveillance system monitor.  (T. 32-33.)  The ALJ therefore concluded that Plaintiff is not disabled.

### D.     The Parties' Briefings on the Their Cross-Motions

#### 1.     Plaintiff's Motion for Judgment on the Pleadings

Generally, Plaintiff makes six arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues that the ALJ erred in failing to analyze her claim pursuant to the correct protective filing date.  (Dkt. No. 12, at 3 [Pl.'s Mem. of Law].)  More specifically, Plaintiff argues that, rather than using her May 19, 2014, filing date, the ALJ should have used January 9, 2013, as the relevant date based on the Appeals Council's statements in a decision on previous application.  (*Id.*)  Plaintiff notes that the Appeals Council's May 8, 2014, decision stated that, "[i]f you file a new claim for . . . supplemental security income within 60 days after you receive this letter, we can use January 9, 2013, the date of your request for review, as the date of your new claim."  (*Id.*)  Plaintiff argues that, because she filed her most recent application well within that 60-day period, the ALJ should have analyzed her claim beginning January 9, 2013.  (*Id.*)

Second, Plaintiff argues that the ALJ erred in failing to afford greater weight to the opinions from the treating sources Sabieli Kibeli, M.D., and Carla Hausrath, A.N.P., as well as to the opinion from examining psychologist Richard Liotta, Ph.D.  (*Id.* at 15-22.)  More specifically, Plaintiff argues that the ALJ was not permitted to reject NP Hausrath's opinion simply because she was not a mental health specialist, and that the ALJ erred in affording insufficient weight to Dr. Liotta's opinion because Dr. Liotta's own observations supported the opined limitations.  (*Id.* at 20-22.)  Plaintiff additionally argues that the ALJ erred in affording more weight to an examining consultant than to her "long-time primary care provider."  (*Id.* at 22.)

Third, Plaintiff argues that the ALJ erred in failing to find that her COPD equals Listing 3.02. (*Id.* at 22-24.) More specifically, Plaintiff concedes that the pulmonary functioning test results do not meet the requirements of Listing 3.02, but argues that she nonetheless should have been found to equal that listing based on the medical evidence and her symptoms, including difficulty breathing and walking, tiredness and shortness of breath, interference with daily activities as a result of her breathing difficulties, and her use of a nebulizer and other inhalers. (*Id.* at 23-24.)

Fourth, Plaintiff argues that the ALJ's credibility finding is not supported by substantial evidence. (*Id.* at 24-28.) More specifically, Plaintiff argues that her activities of daily living, treatment records, and use of medications enhance her credibility rather than detract from it and that the ALJ's reliance on statements from physicians that her COPD was "stable" to determine that it did not impose more serious limitations was erroneous and improper. (*Id.* at 27-28.)

Fifth, Plaintiff argues that the RFC determination is not supported by substantial evidence. (*Id.* at 28-36.) More specifically, Plaintiff argues that (a) her COPD prevents her from being able to perform sedentary work, (b) the ALJ failed to properly consider the effects of her obesity, (c) the ALJ failed to correctly include limitations resulting from her learning disorder and borderline intelligence when posing questions to the vocational expert, (d) the ALJ failed to consider her limitations in social functioning and concentration, persistence and pace in combination with her other impairments, (e) the ALJ erred in failing to find carpal tunnel syndrome and Raynaud's syndrome to be severe at Step Two and in failing to include corresponding limitations in the RFC. (*Id.* at 29-36.)

Sixth, Plaintiff argues that the Step Five determination is not supported by substantial evidence because (a) the record evidence indicates that she can only perform work with a language level of 1, while the jobs identified by the vocational expert have language levels of 2 and 3, and (b) the vocational expert's testimony that use of a nebulizer throughout the day could be accommodated by an employer had "no factual evidentiary basis." (*Id.* at 36-40.)

### 2.    Defendant's Motion for Judgment on the Pleadings

Generally, Defendant makes four arguments in support of her motion for judgment on the pleadings. First, in opposition to Plaintiff's third argument, Defendant argues that the ALJ did not err in finding that Plaintiff did not meet or equal Listing 3.02. (Dkt. No. 14, at 5-7 [Def.'s Mem. of Law].) More specifically, Defendant argues that the pulmonary functioning testing results showed post-bronchodilator scores that were "significantly above the listing requirements," and that the overall medical evidence supports the ALJ's finding that Plaintiff's COPD did not equal Listing 3.02. (*Id.*)

Second, in response to Plaintiff's second and fifth arguments, Defendant argues that the RFC finding is supported by substantial evidence. (*Id.* at 7-17.) Regarding Plaintiff's physical impairments, Defendant argues that (a) the ALJ properly evaluated and weighed the opinion evidence, noting in particular that Dr. Kabeli's pulmonary functioning testing was not a medical opinion that the ALJ was required to explicitly weigh (and that, nonetheless, the ALJ "throughly described why this evidence was not conclusive" including noting more recent testing and Dr. Kibeli's other findings), (b) properly determined that Plaintiff could perform light or sedentary work, and (c) properly considered Plaintiff's obesity by finding it to be a severe impairment and analyzing its effect through the medium of the opinion evidence despite the lack of any evidence

that obesity further limits her functioning.  (*Id.* at 7-13.)  Regarding Plaintiff's mental

impairments, Defendant argues that (a) the ALJ properly afforded little weight to NP Hausrath's

opinion because she was not an acceptable medical source, did not specialize in psychological

care, and her opinion was inconsistent with contemporaneous treatment records, (b) the ALJ

properly declined to rely on the opinion of Dr. Liotta or to consider limitations from an

intellectual impairment because Plaintiff has not previously alleged or provided evidence to

support the existence of such an impairment, and (c) the ALJ properly relied on the opinion of

consultative examiner Carly Melcher, Psy.D.  (*Id.* at 14-17.)

Third, in response to Plaintiff's fourth argument, Defendant argues that the credibility

finding is supported by substantial evidence.  (*Id.* at 10-12.)  More specifically, Defendant argues

that the ALJ appropriately noted that Plaintiff's allegations of disabling physical limitations were

not fully borne out by the record, including the medical evidence, her treatment history, and her

reported activities of daily living.  (*Id.*)

Fourth, in response to Plaintiff's sixth argument, Defendant argues that the Step Five

finding is supported by substantial evidence.  (*Id.* at 18.)  More specifically, Defendant argues

that Plaintiff's argument is simply a rehash of her unpersuasive arguments as to why the RFC

finding is erroneous and that Plaintiff's objection to the vocational expert's testimony regarding

nebulizer use is moot because such limitation was not made part of the RFC finding.  (*Id.*)

## II.    APPLICABLE LEGAL STANDARDS

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an

individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d

856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the

[Commissioner], even if it might justifiably have reached a different result upon a *de novo*

review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an

individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.

The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v.*

*Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity.  If he is not, the
> [Commissioner] next considers whether the claimant has a "severe
> impairment" which significantly limits his physical or mental ability
> to do basic work activities.  If the claimant suffers such an
> impairment, the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed in Appendix
> 1 of the regulations.  If the claimant has such an impairment, the
> [Commissioner] will consider him disabled without considering
> vocational factors such as age, education, and work experience; the
> [Commissioner] presumes that a claimant who is afflicted with a
> "listed" impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the fourth
> inquiry is whether, despite the claimant's severe impairment, he has
> the residual functional capacity to perform his past work.  Finally, if
> the claimant is unable to perform his past work, the [Commissioner]
> then determines whether there is other work which the claimant could
> perform.  Under the cases previously discussed, the claimant bears
> the burden of the proof as to the first four steps, while the
> [Commissioner] must prove the final one.

\\*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin*, 758 F.3d 146,

150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA

will not review the claim further."  *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

III.    ANALYSIS

A.    Whether January 9, 2013, or May 19, 2014, Was the Correct Protective
       Filing Date for Plaintiff's Claim

After careful consideration, the Court finds that it need not answer this question because

the ALJ's discussion and rationale in the decision indicates that explicit consideration of the

evidence beginning January 9, 2013 (rather than May 19, 2014) would not have altered the

ALJ's findings.  *See Thompson v. Comm'r of Soc. Sec.*, No. 7:10-CV-1085, 2011 WL 5080239,

at *13 (N.D.N.Y. Aug. 18, 2011) (Baxter, M.J.) Report and Recommendation adopted in 2011

WL 5080213 (Sharpe, J.) (noting that the harmless error standard is applied to Social Security

actions in appropriate circumstances) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 [2d Cir.

1987]; *Jones v. Barnhart*, No. 02-CV-0791, 2003 WL 941722, at *10 [S.D.N.Y. Mar. 7, 2003];

*Seltzer v. Comm'r of Soc. Sec.*, No. 07-CV-0235, 2007 WL 4561120, at *10 [S.D.N.Y. Sept. 26,

1995]).

In particular, the medical treatment evidence from January 9, 2013, through May 18,

2014, does not show signs or symptoms that would undermine or invalidate the ALJ's findings.

Examinations in 2013 did not reveal findings that were significantly different from those in

2014.  On March 12, 2013, Plaintiff was observed to have mild expiratory wheezing but

otherwise had "fairly decent aeration."  (T. 454.)  On March 13, 2013, Plaintiff was observed to

be moderately overweight with moderately decreased airflow, though her lungs were clear

bilaterally; Ms. Hausrath noted that Plaintiff was doing well with asthma on her medications and

that her depressive disorder was well-controlled.  (T. 262.)  On April 23, 2013, Plaintiff had

diminished lung sounds with expiratory wheezes over the bilateral lungs, but was noted to have

bronchitis at that time.  (T. 259.)  On September 23, 2013, Plaintiff reported that she was doing

well in terms of COPD and asthma on her medication regimen; she experienced some dyspnea when exposed to high heat and humidity, but did not have any major problems over the summer. (T. 354.)  Dr. Kabeli observed that she had normal respiratory findings and was alert and oriented with appropriate mood, judgment, and affect.  (T. 355.)  Dr. Kabeli recommended that Plaintiff start a regular exercise program.  (*Id.*)[2]  On September 24, 2013, Plaintiff was observed to be moderately overweight with decreased sensation to microfiliment testing; it was not made clear where this decreased sensation was located.  (T. 255.)  On November 18 and 21, 2013, Plaintiff presented with pneumonia that caused mildly decreased airflow although she had clear lungs and adequate chest expansion bilaterally.  (T. 251-54.)

Additionally, although there is an opinion dated February 12, 2013, from Lynn Schneider, NPC, that the ALJ did not explicitly consider in the decision, the failure to explicitly discuss or weigh that opinion would not be grounds for remand because Ms. Schneider's opinion is identical to the opinions from Ms. Hausrath in terms of the functional limitations opined. (*Compare* T. 452 *with* T. 364, 366.)  Given that Ms. Schneider is also not an acceptable medical source, there is no indication that she had expertise in the treatment of mental health issues, and the ALJ's finding that the medical evidence did not support the very same limitations opined in Ms. Hausrath's opinions, there is no reason to believe that the ALJ would have afforded more than little weight to Ms. Schneider's opinion based on the same reasons provided for affording little weight to Ms. Hausrath's opinions.  Therefore, any failure to weigh Ms. Schneider's

---

[2]     The Court notes that the ALJ explicitly discussed this treatment note from September 23, 2013, in the decision, which suggests that the ALJ did not confine her review of the medical evidence to only the period after May 19, 2014, even while recognizing that as the protective filing date.  (T. 30.)

opinion would be harmless error. *See Blabac v. Comm'r of Soc. Sec.*, No. 3:08-CV-0849, 2009 WL 5167650, at \*9 (N.D.N.Y. Dec. 18, 2009) (Sharpe, J.) (collecting cases which indicate harmless error where the opinions that the ALJ failed to weigh either did not conflict with the ALJ's findings or written consideration of the opinions would not have changed the outcome of the ALJ's decision).

The ALJ also did not explicitly assess the opinion dated May 17, 2013, from Dr. Liotta, who examined Plaintiff for the Clinton County Department of Social Services. (T. 402-07.) This failure would also be harmless error. Notably, Dr. Liotta examined Plaintiff's intellectual functioning. However, Plaintiff did not allege an intellectual impairment affecting her ability to work until the filing of her memorandum of law in this appeal. Notably, at the hearing, when questioned as to whether she had any mental health conditions that limited her ability to work, Plaintiff mentioned only depression. (T. 51.) Additionally, other than Dr. Liotta's assessment, there is no medical evidence suggesting Plaintiff has such a significant impairment or resulting work-related limitations. On July 1, 2014, consultative examiner Dr. Melcher noted that Plaintiff appeared to have below average cognitive functioning, but opined only mild limitations resulting from Plaintiff's mental impairments; Dr. Melcher also specifically noted that Plaintiff's psychiatric problems did not appear significant enough to interfere with her ability to function on a daily basis. (T. 322.) Given that the ALJ afforded great weight to Dr. Melcher's opinion based on its consistency with the overall evidence showing very little impact on Plaintiff's mental work-related functioning, it would not be reasonable to assume that explicit consideration of Dr. Liotta's opinion would have altered the ALJ's findings. *See Coleman v. Comm'r of Soc. Sec.*, No. 5:14-CV-1139, 2015 WL 9685548, at \*5 (N.D.N.Y. Dec. 11, 2015) (Carter, M.J.) Report

and Recommendation adopted by 2016 WL 109994 (Suddaby, C.J.) ("'[A]n ALJ is not required

to discuss in depth every piece of evidence contained in the record, so long as the evidence of

record permits the Court to glean the rationale of an ALJ's decision.'").

Because more explicit consideration of evidence from the earlier period would not have

altered the ALJ's findings (and because it appears that the ALJ did consider evidence from that

period when rendering her decision), any error in incorrectly determining the protective filing

date would be harmless.

### B. Whether the ALJ's Listing of Impairments Finding is Supported By Substantial Evidence

After careful consideration, the Court answers this question in the affirmative for the

reasons stated in Defendant's memorandum of law. (Dkt. No. 14, at 5-7 [Def.'s Mem. of Law].)

To those reasons, the Court adds the following analysis.

"Plaintiff has the burden of proof at step three to show that her impairments meet or

medically equal a Listing." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009)

(Bianchini, M.J., Mordue, J.) (citing *Naegele v. Barnhart*, 433 F. Supp. 2d 319, 324 [W.D.N.Y.

2006]). "To meet a Listing, Plaintiff must show that her medically determinable impairment

satisfies all of the specified criteria in a Listing." *Rockwood*, 614 F. Supp. 2d at 272 (citing 20

C.F.R. § 404.1525[d]). "If a claimant's impairment 'manifests only some of those criteria, no

matter how severely,' such impairment does not qualify." *Rockwood*, 614 F. Supp. 2d at 272

(quoting *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 [1990]).

Additionally, a court may be able to uphold an ALJ's finding that a claimant does not meet a

Listing even where the decision lacks an express rationale for that finding if the determination is

supported by substantial evidence. *Rockwood*, 614 F. Supp. 2d at 273 (citing *Berry v.

Schweiker*, 675 F.2d 464, 468 [2d Cir. 1982]).

Plaintiff's argument that the ALJ erred in failing to find that her COPD medically equaled Listing 3.02 is not persuasive because the evidence discussed by the ALJ and the record as a whole do not substantiate that Plaintiff's COPD imposed restrictions that were equivalent to the severity of symptoms contemplated in Listing 3.02.  Plaintiff's subjective reports of difficulty breathing, tiredness, and shortness of breath that interfere with performance of activities is not supported by the medical evidence, which shows, among other things, that Plaintiff's COPD responded well to her prescribed medications, that she often presented with minimal or no acute respiratory symptoms on examinations, and that her pulmonary specialist recommended multiple times that she engage in a program of regular physical exercise.  (T. 246-47, 326-29, 354-55, 378, 385, 387, 391, 396-97.)  The ALJ's implicit finding that Plaintiff's COPD did not medically equal Listing 3.02 is therefore supported by substantial evidence and remand is not warranted on this basis.

**C.**     **Whether the ALJ's RFC Finding is Supported By Substantial Evidence**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 14, at 7-17 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

**1.**     **The Weight Afforded to the Opinion Evidence**

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 404.1527(c).  "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'"  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015)

(quoting Burgess v. Astrue, 537 F.3d 117, 128 [2d Cir. 2008]).  However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 [2d Cir. 2013]).  However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation."  *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017) (Carter, M.J.) Report and Recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (Suddaby, C.J.) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 [2d Cir. 2013]).  After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'"  *Greek*, 802 F.3d at 375 (quoting Burgess, 537 F.3d at 129).  "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'"  *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30).

The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant.  *See* 20 C.F.R. § 404.1527(c)(1)-(6).  Additionally, when weighing opinions from sources who are not considered "medically acceptable sources"[3] under the regulations, the ALJ

---

[3]    Medically acceptable sources are noted to include the following: licensed physicians; licensed or certified psychologists; licensed optometrists; licensed podiatrists; and qualified speech-language pathologists.  SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006).

must consider the same factors as used for evaluating opinions from medically acceptable

sources. *Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) (Mordue, C.J.) (citing

*Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 [E.D.N.Y. 2010]); SSR 06-03p, 2006

WL 2329939.

       In terms of Plaintiff's physical impairments, the only opinions in the record were from

Ms. Hausrath and consultative examiner Nader Wassaf, M.D.[4]  In opinions on May 12, 2014,

and July 21, 2015, Ms. Hausrath opined that, due to COPD, neuropathy, and GERD, Plaintiff

was "very limited" in her abilities to walk, stand, lift, carry, and climb (including stairs), and

"moderately limited" in her ability to use her hands.  (T. 364, 366.)[5]  Ms. Hausrath further

opined that Plaintiff was unable to work due to the severity of her COPD and fatigue.  (*Id.*)  The

ALJ did not explicitly discuss or weigh this physical portion of Ms. Hausrath's opinion.

However, it is clear that the ALJ was aware of these opinions because they were contained in the

same forms as Ms. Hausrath's mental opinions, which the ALJ discussed in great detail.  (T. 24-

25.)  Additionally, the ALJ discussed various treatment notes from Ms. Hausrath that showed

few symptoms that would support the limitations included in her opinions, suggesting that the

---

[4]     To the extent that Plaintiff implies that the ALJ should have afford weight to the
2012 pulmonary functioning testing and statements in treatment notes from Dr. Kabeli as
opinion evidence, the Court rejects those arguments for the reasons stated in Defendant's
memorandum of law.  (Dkt. No. 14, at 9-10 [Def.'s Mem. of Law].)  Specifically, the 2012
pulmonary function testing was from well before the relevant period, there was more recent
testing to consider, the statements in Dr. Kabeli's treatment notes that Plaintiff quotes were
merely a recitation of Plaintiff's subjective reports (rather than independent medical opinions),
and Dr. Kabeli did not provide any assessment outlining specific functional limitations.  The
ALJ was therefore not required to weigh any opinion evidence from Dr. Kabeli because there
was no opinion evidence from Dr. Kabeli.

[5]     The terms "very limited" and "moderately limited" are not defined in the opinion.
(T. 364, 366.)

ALJ implicitly recognized that Ms. Hausrath's own findings did not show the level of limitation reflected in her opinion. (T. 30-31.) In the context of the totality of the ALJ's decision, the failure to explicitly discuss or weigh this portion of Dr. Hausrath's opinion has not prevented the Court from being able to trace the ALJ's logic and determine whether substantial evidence supports the ALJ's findings; it is clear from the ALJ's recitation of the evidence that the ALJ implicitly declined to rely on this opinion based on inconsistency with the considered evidence. *See Booker v. Astrue*, No. 1:07-CV-0646, 2011 WL 3735808, at *5 (N.D.N.Y. Aug 24, 2011) (Sharpe, J.) ("The crucial factors in an ALJ's decision must be set forth in sufficient detail as to enable meaningful review by the court.") (citing *Ferraris v. Heckler*, 728 F.2d 582, 587 [2d Cir. 1984]); *Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) (Mordue, C.J.) ("The ALJ must 'build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.'") (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 [7th Cir. 2002]).

On July 1, 2014, Dr. Wassef opined that Plaintiff should have no exposure to temperature extremes, secondhand smoke, perfumes, chemicals or respiratory irritants, and that she has moderate limitations in standing, walking, climbing and descending stairs, operating foot controls, pushing, pulling, and handling. (T. 328.) On examination, Dr. Wassef observed that Plaintiff had, among other things, a normal gait with the ability to walk on her heels and toes (although she had discomfort when standing and walking on her toe tips and with squatting), no sensory deficits and 5/5 strength in her upper and lower extremities, 5/5 grip strength with intact hand and finger dexterity (although she had discomfort with fine motor activity), and very severe respiratory obstruction that significantly improved with the administration of medication. (T.

-17-

326-28.) The ALJ afforded Dr. Wassef's opinion great weight based on the consistency of the
opinion with both his own findings and the rest of the medical evidence. (T. 31.)

  The ALJ's assessment of the above physical opinion evidence is supported by substantial
evidence. Specifically, the medical and other evidence as a whole supports the ALJ's greater
reliance on Dr. Wassaf's opinion. As noted above in Part III.B of this Decision and Order,
Plaintiff's COPD responded well to her prescribed medications, she often presented with
minimal or no acute respiratory symptoms on examinations, and Dr. Kabeli even recommended
multiple times that she engage in a program of regular physical exercise. (T. 246-47, 326-29,
354-55, 378, 385, 387, 391, 396-97.) Such evidence is, as the ALJ concluded, more consistent
with the moderate limitations in exertional activities opined by Dr. Wassef than the "very
limited" opinion from Ms. Hausrath.

  In terms of Plaintiff's mental impairment, the record contains opinions from Ms.
Hausrath, consultative examiner Dr. Melcher, and state agency medical consultant Dr. Herrick.
In opinions on May 12, 2014, and July 21, 2015, Ms. Hausrath opined that Plaintiff was "very
limited" in the ability to function in a work setting at a consistent pace and moderately limited in
the abilities to understand, remember and carry out instructions, maintain attention and
concentration, make simple decisions, interact appropriately with others, and maintain socially
appropriate behavior without exhibiting behavioral extremes. (T. 364, 366.) The ALJ afforded
this opinion little weight because (a) Ms. Hausrath was not an acceptable medical source, (b)
there was no indication that she had any expertise in the treatment of mental health issues, and
(c) the medical evidence did not support the opined limitations. (T. 24.)

On July 1, 2014, Dr. Melcher opined that Plaintiff was able to follow and understand simple directions and instructions, perform simple tasks independently and make appropriate decisions with mild limitations in maintaining attention, concentration and a regular schedule, learning new tasks and performing complex tasks, relating adequately to others, and dealing appropriately with stress. (T. 322.) Dr. Melcher opined that Plaintiff's mental impairments and resulting limitations do not appear significant enough to interfere with her functioning on a daily basis. (*Id.*) On examination, Dr. Melcher observed, among other things, a flat and dysphoric affect, dysthymic mood, mildly impaired attention and concentration, mildly impaired recent and remote memory, and below average cognitive functioning. (T. 321.) The ALJ afforded great weight to Dr. Melcher's opinion based on the consistency of the opinion with both her own findings and the rest of the medical evidence. (T. 25.)

On July 26, 2014, Dr. Herrick opined that Plaintiff had moderate limitations in the abilities to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, and complete a normal workday or workweek without interruptions from psychologically based symptoms or perform at a consistent pace without an unreasonable number and length of rest periods. (T. 84-85.) Dr. Herrick opined that, overall, Plaintiff did not have any marked limitations and retained the capacity to work. (T. 85.) The ALJ afforded this opinion little weight because it was inconsistent with Dr. Melcher's findings, despite the fact that Dr. Herrick appeared to rely heavily on Dr. Melcher's findings when conducting his review.

The ALJ's assessment of the above mental opinion evidence is supported by substantial evidence. The record is almost wholly devoid of any evidence that Plaintiff experienced

symptoms or limitations as a result of her depression.  Mental status examinations were consistently normal other than mild symptoms noted on examinations by Dr. Melcher and Dr. Liotta (who, apart from the intelligence-related testing discussed previously, noted only that Plaintiff's mood appeared somewhat depressed and her affect somewhat constricted).  (T. 247, 321, 355, 387, 397, 405.)  This Court cannot say that the ALJ was unreasonable in rejecting even the moderate limitations opined by Dr. Herrick and Ms. Hausrath based on the evidence in the record as a whole.

For the above reasons, the ALJ's conclusions as to the opinion evidence are supported by substantial evidence.  Remand is not warranted on this basis.

### 2. The ALJ's Consideration of Obesity, Carpal Tunnel Syndrome, and Raynaud's Syndrome

The ALJ did not err when considering Plaintiff's obesity.  As Defendant notes, the ALJ explicitly found obesity to be a severe impairment and considered that impairment when formulating the RFC because the opinion evidence he relied on was by physicians who assessed Plaintiff's weight and reasonably factored obesity into their assessment of limitations.  (Dkt. No. 14, at 13 [Def.'s Mem. of Law].)  Additionally, not only do the medical records not contain any indication of further specific limitations caused by Plaintiff's obesity, but many of Plaintiff's treatment records conflictingly note that she appeared to weigh in a normal range.  (T. 372, 374, 378, 380, 382, 389.)  Plaintiff has not convincingly shown that the ALJ failed to properly consider the effects of her obesity.

Plaintiff's argument that the ALJ failed to consider her carpal tunnel syndrome and Raynaud's syndrome is likewise meritless.  Contrary to Plaintiff's assertion that the ALJ did not find these impairments severe, the ALJ explicitly included both in the list of severe impairments.

(T. 24.)  Additionally, Plaintiff's argument that the evidence does not support the ALJ's limitation for frequent handling and fingering is wholly conclusory.  Plaintiff cites to no opinion evidence showing greater restriction in these functions.  Notably, even the opinion of Ms. Hausrath (the most limiting opinion in the record) opines that Plaintiff is only moderately limited in her ability to use her hands.  (T. 364, 366.)  Consultative examiner Dr. Wassef also found that Plaintiff was only moderately limited in the ability to handle.  (T. 328.)  The medical evidence shows some decreased sensation in the palms and fingertips resulting from mild carpal tunnel syndrome and Raynaud's syndrome, and Dr. Wassef observed that Plaintiff had 5/5 grip strength and intact dexterity with some discomfort during fine motor activity.  (T. 246, 250, 327, 398-99.) Plaintiff therefore has not persuasively shown that the ALJ's limitation for frequent handling and fingering lacks a basis in substantial evidence.

### 3.    The ALJ's Consideration of Plaintiff's Mental Functioning

Plaintiff also argues that the ALJ failed to consider the effects of her learning disability and/or intellectual impairment and failed to consider limitations related to these impairments and depression in combination with her physical impairments.  Both arguments lack merit.

As to Plaintiff's learning disability and intellectual impairment, the Court reiterates that Plaintiff did not allege these impairments when proceeding before either the ALJ or the Appeals Council, but instead alleges them for the first time in this appeal.  This is despite the fact that Plaintiff has been represented at every stage by the same attorney since her initial application and that Dr. Liotta's examination was conducted in May 2013, a year before Plaintiff filed her current application.  (T. 17, 39-40, 77.)  *See Plante v. Astrue*, 06-CV-0972, 2009 WL 1951352, at *2 (N.D.N.Y. July 2, 2009) (Kahn, J.) (noting cases in which the Court has found that failure

to raise an objection to a vocational expert's qualifications before either the ALJ or the Appeals Council resulted in a forfeiture of that objection at the level of the federal court).  Plaintiff bears the ultimate burden to prove disability and her failure to raise intellectual disability as a basis for her alleged disability until this appeal is questionable.  However, even considering the evidence from Dr. Liotta, the Court finds nothing in the record that would undermine the ALJ's findings, given that the record is otherwise devoid of evidence supporting Plaintiff's contention that she has an intellectual impairment that impacts her ability to work.  As to Plaintiff's related argument that the ALJ failed to correctly identify her "mental and learning limitations" when presenting hypothetical questions to the vocational expert, the Court finds that the limitations included in the RFC (and the resulting hypothetical questions to the vocational expert) are supported by substantial evidence, as discussed above in Parts III.A and III.C.1 of this Decision and Order.  Notably, although Dr. Liotta opined that Plaintiff had an intellectual impairment that would impact her ability to work, Dr. Melcher's opinion found no significant limitations and Plaintiff did not allege that her ability to work was hampered by an intellectual impairment.

As to Plaintiff's argument that the ALJ failed to consider her mental impairments in combination with her physical impairments, the ALJ's decision substantiates that the ALJ considered the evidence related to all of Plaintiff's relevant impairments.  Plaintiff's argument to the contrary is without any specific support and entirely conclusory.  The Court consequently finds no error in the ALJ's consideration of Plaintiff's alleged mental and intellectual impairments

**D.    Whether the ALJ's Credibility Finding is Supported By Substantial Evidence**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 14, at 10-12 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

In determining whether a claimant is disabled, the ALJ must also make a determination as to the credibility of the claimant's allegations.  "'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (Bianchini, M.J., Suddaby, J.) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 [N.D.N.Y. 1999] [Smith, M.J., Kahn, J.]).  The Second Circuit recognizes that "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'"  *Schlichting*, 11 F. Supp. 3d at 206 (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 [2d Cir. 1983]; *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 [2d Cir. 1984]).  Due to the fact that the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is generally entitled to deference.  *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012) (Bianchini, M.J., Kahn, J.) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 [2d Cir. 1999]).

-23-

Plaintiff's arguments on the ALJ's credibility finding are unavailing. The ALJ properly noted that Plaintiff's reports of disabling breathing difficulties and neuropathy in particular were not supported by the medical and other evidence, which by and large showed fairly minimal symptoms when Plaintiff was taking her prescribed medications. Additionally, it was not error for the ALJ to rely in part on a statement from Dr. Kabeli that Plaintiff's COPD and asthma were "stable" on her medications because the evidence in this case (particularly the pulmonary functioning testing) establishes that Plaintiff's medications significantly improved her respiratory symptoms. The ALJ did not interpret "stable" as meaning that Plaintiff had no limitations; rather, the ALJ limited her to a range of light work based on the totality of the evidence. The ALJ's discussion of the evidence is sufficient to show that substantial evidence supports the credibility finding.

E.      **Whether the ALJ's Step Five Finding is Supported By Substantial Evidence**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14, at 18 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

Although the claimant has the general burden to prove he has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'" *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (quoting *Brault v. Soc. Sec. Admin*., 683 F.3d 443, 445 [2d Cir. 2012]). "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' . . . and [the hypothetical] accurately reflect[s] the limitations and capabilities of the

claimant involved." *McIntyre*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 [2d Cir. 1983]; citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 [2d Cir. 1981]).

As to Plaintiff's argument that the jobs provided by the vocational expert are not proper because they cannot be performed by an individual with a language level of 1, the ALJ did not limit Plaintiff to a language level of 1 and there is no evidence in the record suggesting that such a limitation was merited. Plaintiff's argument therefore is without merit.

Similarly, Plaintiff argument that the vocational expert's response to an additional hypothetical posed by Plaintiff's representative at the hearing related to an employer's willingness to accommodate use of a nebulizer in the workplace is without factual basis is irrelevant to the issue of whether the Step Five finding is supported by substantial evidence because the ALJ did not include such a limitation in the RFC.

The ALJ's Step Five finding is supported by the vocational expert's testimony in response to hypothetical questions encompassing the limitations included in the RFC, which were properly based on the opinion evidence and the record evidence as a whole as discussed above in Part III.C of this Decision and Order. Consequently, the Step Five finding is supported by substantial evidence. Remand is not warranted on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that the Commissioner's decision denying Plaintiff disability benefits is

**AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: June 11, 2018
　　　　Syracuse, New York

HON. GLENN T. SUDDABY
United States District Judge